Filed 10/5/20  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DANIEL SAPIEN LOPEZ, Defendant and Appellant. | F077946 (Super. Ct. No. CF99640276) OPINION |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*] Before Franson, Acting P.J., Smith, J. and Snauffer, J.

In 2000, Daniel Sapien Lopez was sentenced to serve 201 years and eight months to life in prison for committing several crimes including six separate third strike offenses. The sentence included 30 years for three separate firearm enhancements (Pen. Code,[1] § 12022.53, subd. (b)) and one year for a prison prior enhancement (§ 667.5, subd. (b)). After a series of appeals, his sentence was reduced to 199 years and eight months to life in prison by virtue of an unpublished opinion filed in this court in 2004. (*People v. Lopez* (Cal. Ct. App., Jan. 14, 2004, No. F036242) 2004 WL 61128 (*Lopez*).)

After several attempts, Lopez successfully petitioned the Superior Court in 2018 for resentencing pursuant to section 1170.18.[2] He simultaneously sought relief from the firearm enhancements pursuant to then newly enacted Senate Bill No. 620 (Reg. Sess. 2017-2018, § 1), which gave trial courts the discretion to strike these enhancements.

The Superior Court granted Lopez relief under section 1170.18. At the resentencing hearing, Lopez's counsel chose not to present any argument relating to the firearm enhancements. Instead, defense counsel informed the court, "My position is Mr. Lopez would like to speak on his own behalf." Lopez could not persuade the court. He was subsequently resentenced to serve 197 years to life in prison. This appeal followed, in which he argues defense counsel was ineffective at the resentencing hearing by failing to research and present a colorable argument to strike the firearm enhancements.

Following the initial briefing in this case, Lopez filed a supplemental brief arguing for relief pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess., § 1, SB 136). If applicable, SB 136 would eliminate the one-year prior prison enhancement in this case.

---

[1] All code references are to the Penal Code.

[2] Section 1170.18 allows individuals to reduce certain nonviolent drug and theft-related felony convictions to misdemeanors.

2.

The People argue Lopez's counsel was not ineffective with regards to the firearm enhancement issue but concede SB 136 applies in this case. We agree with the People.

## BACKGROUND

For purposes of this appeal, the relevant factual background is those crimes involving firearms or similar weapons. Because Lopez relies almost entirely on the facts as described in this court's 2004 opinion, we reproduce the relevant portions below.

"On July 1, 1999, shortly after 3 p.m., Wa Vue Yang was sitting in the driver's seat of his parked vehicle waiting for his wife to come out of the market. [Lopez] approached the driver's side of the vehicle and asked Yang if he wanted to buy a watch. Yang declined because he already owned a watch. [Lopez] pulled out a gun and fired a shot into the ground. [Lopez] pointed the gun at Yang's face and told him to get out of the vehicle. Yang got out of the vehicle, leaving the keys in the ignition. [Lopez] got in the vehicle and threw his backpack onto the passenger seat. Yang realized he had left some checks in the van. Yang wanted the checks so he turned around, returned to the vehicle, and confronted [Lopez]. He was not as afraid of the gun as he had been initially because, after thinking about it, he thought the gun was an air gun. [Lopez] pointed a gun at Yang and pulled the trigger twice; the gun did not fire. [Lopez] fled, leaving his backpack in the vehicle. Inside the backpack was a video rental card belonging to [Lopez] and his mother. (Count five, carjacking, plus personal use of a weapon enhancement.)

"At approximately 3:30 p.m. on July 1, 1999, Lao Cha was getting into her car after shopping at a store that was approximately one quarter of a mile from Yang's vehicle. [Lopez] ran a bicycle into her leg. When Cha turned, [Lopez] pointed a gun to her head. He told her to run for her life. Cha ran, and [Lopez] drove off in her red Toyota Tercel. (Count six-carjacking, plus personal use of a weapon; count nine-unlawful taking of a vehicle.)" (*Lopez, supra,* 2004 WL 61128 at *1.)

"On July 8, 1999, security guard Rick Lopez was dispatched by his dispatcher to a nearby business, Fresno Firearms. When [Rick] arrived, he saw a red car on the sidewalk. The front end of the car had been driven into the building. [Rick] saw [Lopez] leaving the building with items in his hand. He was about 50 feet from [Lopez]; [Rick] yelled at [Lopez]. [Lopez] pulled out a semiautomatic handgun and pointed it directly at [Rick]; [Rick's] attention was focused on the gun. [Lopez] fled. The business owner came to the scene, where he discovered several knives were missing. Blood drops in the business were tested and matched [Lopez's] DNA at a ratio of 1 in 52,000. (Count eleven-second degree robbery, and personal use of a firearm.)" (*Lopez, supra,* 2004 WL 61128 at *2, fn. omitted.)

On July 9, 1999, a police officer's home was burglarized. "[O]ne of the items stolen was a firearm." (*Lopez, supra,* 2004 WL 61128 at *8.)

"On July 12, 1999, at approximately 7 a.m., Martha Garcia and Israel Cruz were asleep in their apartment. They heard a noise. Garcia got up to check on the noise. She encountered [Lopez] standing in her living room dressed in the uniform of a Madera police officer. [Lopez] pointed a gun at her and ordered her to sit down. At this time Cruz entered the room. [Lopez] ordered Cruz to his knees and handcuffed him. He asked Cruz for money. Cruz took [Lopez] into the kitchen to retrieve some money. [Lopez] took Cruz into the garage and Garcia fled to the home of a neighbor.

"Garcia told her neighbor, Jose Lopez, about the man in their apartment. [Jose] went to investigate. [Jose] saw [Lopez] standing in the apartment dressed in a police uniform and holding a gun, and saw that Cruz was handcuffed. [Lopez] asked [Jose] if he wanted to go to jail and told him to leave. [Jose] left, returned to his apartment, and instructed his wife to call the police. (Counts one and two-robbery, plus a personal use of a weapon enhancement for both counts, and an impersonating a police officer enhancement for both counts.) [Lopez] fled." (*Lopez, supra,* 2004 WL 61128 at *2.)

Lopez was apprehended nearby. In his vicinity, an officer "found a gym bag containing a gun belt, a gun, a police uniform and badge." (*Lopez, supra,* 2004 WL 61128 at *2.) These were apparently the items stolen from the burglary on July 9 at the police officer's home.

"The victims of the carjackings that occurred on July 1, 1999, were uncertain whether the gun possessed by [Lopez] was a real gun. During the proceedings before the trial court, the parties discussed whether there was sufficient evidence to prove that [Lopez] possessed a firearm, as opposed to a pellet gun, for some of the carjacking charges. The defense requested the court to state its view of the evidence of the firearm use regarding the two carjacking counts, because, if the court believed the firearm use was proved, [Lopez] wanted to present evidence to dispute this finding. The parties discussed the issue. The court stated that the police officer's firearm was stolen on July 7, so it is clear that the weapon used in the carjackings on July 1 was not the stolen firearm. The People acknowledged the weakness in their evidence. Defense counsel indicated that [Lopez] was prepared to testify that he was the person who accosted the carjacking victims and at that time he was armed with a pellet gun. The court inquired into what the pellet gun looked like. [Lopez] offered to the court, 'It's like a revolver.' The prosecution agreed that this type of gun looks like a revolver, is a carbon dioxide driven weapon, and is not a firearm within the meaning of the law. The prosecution then agreed to reduce the firearm enhancement on counts five and six (the carjackings) to personal use of a deadly or dangerous weapon. (§ 12022, subd. (b).)" (*Lopez, supra,* 2004 WL 61128 at *8.)

This court also considered whether the evidence was sufficient to prove the firearm enhancement in the security guard robbery. We acknowledged "the [trial] court erroneously [believed] that the police officer's gun was stolen on July 7." As noted, it was actually stolen two days later on July 9. Nonetheless, we found sufficient evidence

to prove the enhancement beyond a reasonable doubt. (*Lopez, supra,* 2004 WL 61128 at *8-9.)

## DISCUSSION

The two issues on appeal are whether Lopez's counsel rendered ineffective assistance in connection with the resentencing hearing and whether SB 136 applies retroactively. We address each in turn.

### I. Defense Counsel Was Not Ineffective

The thrust of Lopez's argument on appeal is that, had his counsel properly researched the facts, he could have presented a valid claim the firearm enhancements were unjustified. The arguments underlying his claim include that no firearm was discharged, no victim was physically injured, and the evidence he used a real firearm in relation to the security guard robbery was "far from overwhelming ...." These contentions are meritless.

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 685-686.) " '[T]o establish a claim of ineffective assistance of counsel, [Garcia] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).) "[D]eference to counsel's performance is not the same as abdication" and " 'must never be used to insulate counsel's performance from meaningful scrutiny

and thereby automatically validate challenged acts or omissions.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675.)

" 'If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*Bell, supra,* 7 Cal.5th at p. 125.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*In re Gay* (2020) 8 Cal.5th 1059, 1086.)

Lopez cannot satisfy either prong. His argument for deficient performance hinges upon whether defense counsel properly researched the facts. As he concedes in his briefing, "[i]t is unknown on this record whether defense counsel ever read" this court's 2004 opinion. He then reiterates the concession with the caveat it is possible defense counsel researched the facts but "inexplicably failed" to present any argument at the resentencing hearing in 2018. The record sheds no light on whether defense counsel researched the facts or, alternatively, why he chose not to present an argument after researching the facts.

On this record, we are unable to find defense counsel's performance fell below an objective standard of reasonableness. The underlying arguments now advanced on appeal are flawed and unpersuasive.

Inherent in the convictions themselves are the facts that no firearms were discharged and no physical violence occurred. The alleged enhancements were for using firearms as opposed to discharging firearms.[3] (§ 12022.53 (b).) And none of the crimes or enhancements required proof of injury to a victim. We cannot fault defense counsel for not presenting these arguments to the court.

---

[3] Section 12022.53 separately proscribes using firearms, discharging firearms, and discharging firearms causing great bodily injury.

Equally flawed is the argument that the evidence to prove the firearm enhancement in the security guard robbery was "far from overwhelming …." Lopez points out the original trial court mistakenly believed the police officer's firearm was stolen *before* this robbery. Because he used a "pellet gun" in the earlier crimes, he then concludes "it could reasonably be argued that [he] continued to use the pellet gun" until he "obtain[ed] an actual firearm" *after* the security guard robbery. Although correct regarding the original court's error, the argument assumes Lopez could not access any other firearms. The argument is pure conjecture. We cannot blame defense counsel for failing to present baseless and speculative arguments.[4]

Accordingly, there is a satisfactory explanation for counsel's choice: After researching the facts, allowing Lopez to personally plead for mercy might have been the best strategy. But we simply cannot know because "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Specifically, our " 'ability to determine from the record whether an attorney has provided constitutionally deficient legal representation is in the usual case severely hampered by the absence of an explanation of an attorney's strategy.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653.) "The merits of such claims are more appropriately resolved, not on the basis of the appellate record, but rather by way of a petition for writ of habeas corpus." (*Ibid*.) This case is not the exception.

Finally, even if defense counsel was deficient by not presenting these arguments, Lopez cannot satisfy his burden to prove prejudice. He claims "there is a sufficient

---

[4] Lopez also argues the July 12, 1999 robberies in which he wore a police officer's uniform were not "random crimes against innocent citizens …." He explains the robbery was motivated by his intent to exact money owed to him due to a previous drug transaction. Lopez makes no attempt to explain how these facts are mitigating or why the court would strike the enhancements on this basis.

probability that had [defense] counsel made almost any effort to marshal relevant facts or present competent argument to the court below, at least one of the gun enhancements might have been stricken in the interests of justice." The claim is conclusory and speculative. To find a reasonable probability of a more favorable sentence, we would need to conclude not only was the court oblivious to the actual facts, but also that the court declined to strike the enhancements *because* the firearms were discharged or the victims were injured. The record does not support these conclusions.

Nor are we persuaded that arguing an enhancement proven beyond a reasonable doubt and affirmed on appeal should be stricken because the evidence is nonetheless "far from overwhelming" would result in a more favorable sentence. Lopez does not attempt to explain why the court would positively receive this argument. On this record, we cannot find the sentencing court would have stricken an enhancement by interjecting its personal view of the evidence. The ineffective assistance claim fails.

## II. SB 136 Applies Retroactively

The remaining issue is whether SB 136 applies retroactively. Lopez argues it is retroactive and his one-year sentence enhancement is no longer valid. The People concede the issue.

SB 136 amended "section 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement for most prior convictions. [Citation.] An exception, not applicable here, is made for a qualifying prior conviction on a sexually violent offense …. [¶] Because SB 136 became effective before [Lopez's] judgment became final, we agree with the parties that the amended law applies to him retroactively." (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 876.) He is thus entitled to relief.

### DISPOSITION

The judgment is affirmed. The section 667.5 subdivision (b) enhancement is stricken. The trial court is directed to appropriately amend the abstract of judgment and forward it to the Department of Corrections and Rehabilitation.